IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

```
KEVIN BUTLER, WILLIAM DAY, JOHN B. )
NELSON, DAWN ODELL, and RICHARD    )
POLLOCK,                           )
                                   )
          Plaintiffs,              )    Civil  No. 07-6241-HO
                                   )
                                   )
               v.                  )    ORDER
                                   )
DOUGLAS COUNTY; CHRIS BROWN,       )
Douglas County Sheriff,            )
individually and in his official   )
capacity,                          )
                                   )
          Defendants.              )
_____)
```

Plaintiffs, Kevin Butler, William Day, John B. Nelson, Dawn Odell, and Richard Pollock, allege claims for First Amendment retaliation pursuant to 42 U.S.C. § 1983 and conversion pursuant to state law.

Plaintiffs are medical marijuana cardholders registered pursuant to the Oregon Medical Marijuana Act, O.R.S. § 475.300 *et seq.*, (OMMA). Terri Nelson registered with the State as the marijuana grower for plaintiff's Richard Pollack and Kevin Butler. Matthew Cook, who lives with Terri Nelson, registered with the State as the marijuana grower for plaintiffs Dawn Odell and William Day. Terri Nelson's mother, Dolores Nelson, registered with the State as the marijuana grower for plaintiff John B. Nelson.

The Douglas County Interagency Narcotics Team (DINT) was involved in the investigation of a marijuana grow operation of John Lee Nelson and Dolores Nelson in the Summer of 2005 at a residence in Myrtle Creek, Oregon owned by Dolores and John Lee Nelson and the Myrtle Creek residence of Terri Nelson and Matthew Cook. Douglas County Sheriff's Deputy Kelly Bean directed the investigation for DINT. At this time, Douglas County was designated by the federal government as a high intensity drug traffic area and John LaFollette, a special agent with the Federal Drug Enforcement Agency (DEA) was assigned to DINT. Bean states that he believed that the DEA was investigating the Nelsons during this time through April of 2007. Bean also states that he believed that the U.S. Attorneys office was considering prosecuting the Nelsons as early as the Summer of 2006.[1]

---

[1]Plaintiffs move to strike various statements made by Bean as hearsay. Much of the statements of Bean's knowledge is attributed to statements made to him by LaFollette and another special agent
(continued...)

In December of 2006, DINT applied for and received a warrant to search the Nelsons's properties. DEA agents were present during the search and seizure of approximately 90 pounds of marijuana at one of the properties and 17 pounds of marijuana at the other. John Lee Nelson controlled the grow operations. Both Dolores Nelson and Matthew Cook stated, at the time of the search, that they did not participate in a meaningful way in the grow operations, or packaging or distribution of the marijuana.

Within several days of the search, Bean faxed several copies of the search warrant affidavits to an assistant United States Attorney. Bean anticipated being called to testify before a federal grand jury.

State criminal charges were brought against Dolores Nelson and John Lee Nelson, but not Terri Nelson or Matthew Cook. On March 29, 2007, plaintiffs intervened in the State criminal prosecution of Dolores Nelson pursuant to the OMMA seeking release to them of the dried usable marijuana in an amount allowed by the OMMA.

Defendant Sheriff Chris Brown also intervened to oppose the return of the Marijuana. It appears that the motion for return would have been well taken under Oregon law, but before the State court could rule on the motion, federal complaints were filed by

---

[1](...continued)
with DEA, Kenneth McGee. The statements are admissible to show that Bean heard them, but not for the truth. The motion to strike is denied, but the court will not consider Bean's declaration as to statements made by others for the truth.

affidavit against John and Dolores Nelson and the federal
government took over prosecution of the case in federal court. The
marijuana was subsequently transferred to federal authorities and
the State criminal matter was dismissed.

The gravamen of plaintiffs' claims is that Douglas County and
Sheriff Brown, knowing that the State court would require return of
the marijuana to plaintiffs, convinced or at least encouraged
federal authorities to assume jurisdiction to prevent plaintiffs
from obtaining their medical marijuana. Plaintiffs contend such
action was taken in retaliation for filing the motion for return in
violation of 42 U.S.C. § 1983. Plaintiffs additionally assert that
they had a right to possession of the marijuana under the OMMA and
that defendants committed conversion by intentionally exercising
dominion and control over the marijuana by refusing to return it
and then causing it to be transferred to the federal government.

Defendants seek summary judgment asserting lack of proof,
qualified immunity, that public policy warrants against finding in
favor of plaintiffs, lack of a County policy or custom that caused
the alleged injury, the Oregon Tort Claims Act bar to the state law
claim against defendant Sheriff Brown, failure to state a claim for
conversion, and preemption.

A.   Lack of Proof and Preemption

Defendants assert they did not take any actions, much less retaliatory action, to convince or influence federal law enforcement to prosecute the Nelsons.  Some evidence with respect to this argument is Bean's declaration about what various federal officials with the DEA and U.S. Attorney's office told him.  The court granted the federal government's motion to quash plaintiffs' request to depose various federal agents and defendants do not submit declarations directly from such agents to demonstrate that the federal government was involved in this case long before plaintiff's filed their motion for return.  The statements of DEA agents and Assistant U.S. Attorneys will not be considered for their truth.  However, Bean's declaration as to what he knew will be admitted, because even if the federal government was not actively seeking to prosecute, Bean's belief that it was, is evidence that contradicts plaintiffs' claims.  This is especially true since DEA agents were actively involved in the search and seizure and an agent was assigned to DINT.  Even prior to the search and seizure of the marijuana, the federal government had designated Douglas County has a high intensity drug activity trafficking area.

Plaintiffs note that Sheriff Brown was previously ordered by an Oregon court to return marijuana in a similar situation in 2006.  Further, Brown had been quoted in a newspaper article, at about the

same time he intervened in the case to oppose the return of the medical marijuana, regarding his belief that the medical marijuana laws were being abused and that marijuana has no medical value. Plaintiffs also note that a complaint, filed near the time the hearing on the motion to return was set, rather than a grand jury indictment, was used and that the federal government failed to establish a freeze on assets through the federal court. Accordingly, plaintiffs argue that there is circumstantial evidence from which a trier of fact could infer that Brown convinced federal prosecutors to take the case in retaliation for plaintiffs exercising their First Amendment rights.

Plaintiffs' evidence on the issue of whether defendants encouraged federal prosecutors to intervene is speculative as is the evidence regarding intent. The Ninth Circuit has in the past accepted the timing of events to infer retaliatory motive. See, e.g., Thomas v City of Beaverton, 379 F.3d 802, 812 (9th Cir. 2004) (adverse employment action occurring close in time to protected activity is sufficient to show causation). Plaintiffs additionally note that the Ninth Circuit has accepted statements of ill-will as evidence to support retaliation. See, e.g., Alpha Energy Savers, Inc. V. Hansen, 318 F.3d 917 (9th Cir. 2004) (expressed opposition supports contractor's retaliation claim).[2] But this is not an

---

[2]The Ninth Circuit analyzed the contractor's First Amendment retaliation claim case using the same basic approach that it would use as if the claim had been raised by an employee.

employment case and making such a finding under the circumstances of this case to permitted law enforcement activity is unreasonable. If plaintiffs' position was correct, then plaintiffs could similarly seek relief under section 1983 simply because Sheriff Brown intervened to oppose the motion in State court.

Plaintiffs also argue that the federal government does not generally prosecute grow operations of this size in further support of their contention that Brown instigated the prosecution in retaliation for the First Amendment activity. In addition, plaintiffs argue that a reasonable medical marijuana user would be chilled from filing a motion for return as a result of the actions of defendants.

To find that by asserting every means possible to fight what defendants believed to be illegal activity and prevent violating federal law themselves by distributing the marijuana to plaintiffs, defendants engaged in violation of the First Amendment would be an absurd result. There can be no doubt that federal law prohibits the use of medical marijuana. In addition, although use of medical marijuana and limited growing for others' use is permitted under the OMMA, a recent decision of the Oregon courts confirms that federal law preempts the OMMA.

Assuming that Brown did request federal assistance and that had he not, the motion for return would have been successful, it could be argued that defendants would have violated federal law in

7 - ORDER

returning the marijuana to plaintiffs. The Ninth Circuit has indicated in dicta that the return of marijuana pursuant to OMMA would provide immunity to officers in compliance with OMMA. See, United States v. Rosenthal, 454 F.3d 943, 948 (9th Cir. 2006) (implying that state law mandated return of marijuana to medical marijuana user by officers is entitled to immunity for prosecution under the Controlled Substances Act). However, the Oregon Supreme Court has ruled that:

> To the extent that [OMMA] affirmatively authorizes the use of medical marijuana, federal law preempts that subsection, leaving it "without effect." See Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) ("[S]ince our decision in McCulloch v. Maryland, 4 Wheat. 316, 427 [4 L.Ed. 579] (1819), it has been settled that state law that conflicts with federal law is 'without effect.' ").

Emerald Steel Fabricators v. Bureau of Labor and Industries, 348 Or. 159, 178 (2010).[3] Thus, opposing a motion premised on a law that is without effect should not constitute First Amendment retaliation even if such opposition rises to the level of seeking to remove a case from state courts in order to avoid the purported consequences of a state law. The motion for summary judgment is granted and is appropriate as to the federal claim against all defendants as there is no evidence to establish unconstitutional

---

[3]Although Emerald Steel did not expressly deal with OMMA's exemption of medical use of marijuana from criminal liability, the decision does buttress the issue of preemption with respect to qualified immunity as well as the direct constitutionality of the actions taken. Moreover, State law simply cannot negate federal law. Plaintiffs do not and cannot contend that OMMA permits medical use of marijuana under federal law or that it provides immunity from federal prosecution.

retaliation.  Indeed, it could be argued that defendants had a duty to take such action.[4]  In addition, qualified immunity requires summary judgment in favor or defendant Brown.


B.   Qualified Immunity

Although Emerald Steel was decided after the actions at issue in this case and, at the time of the federal prosecution, the Oregon Courts had upheld the return of medical marijuana, See State v. Kama, 178 Or. App. 561 (2002), the federal law upon which the Emerald Steel court relied existed at the time of the events at issue.  Thus, defendant Brown is entitled to qualified immunity. See Saucier v. Katz, 533 U.S. 194, 202 (2001) (even if a constitutional violation is committed, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right).  Seeking to prevent violation of a federal law that preempts a state law by opposing a right granted by that state law, cannot be considered a violation of a clearly established constitutional right.  Even in the absence of Emerald Steel, given the state of federal law on preemption at the time of the alleged violation, no reasonable law

---

[4]The debate over the necessity to legalize marijuana for medical use and whether the federal government should decline to prosecute in such cases, is a political issue that plays no role in this court's decision.

enforcement official would have understood that such action violated the First Amendment.[5]

Moreover, the facts arguably demonstrate that John Lee Nelson exercised control over the marijuana at issue and he was not an authorized grower for any of the plaintiffs. Thus, even assuming that the OMMA is not preempted by federal law, defendants could have reasonably believed that they were not in violation of the First Amendment when opposing the motion for return or allegedly seeking federal prosecution of the case. Thus, Defendant Brown is entitled to qualified immunity and summary judgment is appropriate as to him for this reason as well. Additionally, public policy favors summary judgment in favor of defendants.

C.   Public Policy

Defendants assert that finding a constitutional violation in this case would be contrary to public policy. Plaintiffs again rely on Kama in asserting that it would not be against public policy because the state law clearly required the return of the

---

[5]Plaintiffs argue that a right to be free from retaliation for exercising First Amendment rights was clearly established at the time, but plaintiffs fail to address whether the contours of that right were sufficiently clear that seeking federal assistance in prosecuting a violation of federal law in this situation violates that right. In addition, courts need not first address whether the facts alleged make out a violation of a constitutional right without reference to whether that right is clearly established. Pearson v. Callahan, 129 S.Ct. 808, 818 (2010) (recognizing that there are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right). The facts here are strange in that plaintiffs arguably contend they have a right to violate the Controlled Substances Act and/or force defendants to violate the Act.

marijuana.   As noted above, the marijuana appears to have been seized from a person who was not the designated grower and thus it is not clear return would have been required under the OMMA. Further, as noted above, federal law preempts OMMA such that it has no effect.   Thus, public policy dictates that failure to return marijuana in violation of federal law is not a constitutional violation.   Moreover, the conversion claim fails as well as Sheriff Brown thus did not have authority to turn over the marijuana.   The motion for summary judgment is granted, as to all claims, on this basis as well.

## CONCLUSION

For the reasons stated above, plaintiffs' motion to strike (#84) is denied and defendants' motion for summary judgment (#67) is granted.   This action is dismissed and judgment shall be entered in favor of defendants.

DATED this ____10th____ day of August, 2010.

                              ____s/ Michael R. Hogan_____
                              United States District Judge